UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>   Plaintiff,  )<br>  )<br>v.  )<br>  )<br>STACY STACEY,  )<br>  )<br>   Defendant.  )<br>  ) | No. 6:08-CR-123-ART-HAI-2<br>No. 6:10-CR-03-GFVT-HAI-1<br><br>REPORT & RECOMMENDATION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Amul Thapar and District Judge Gregory Van Tatehove, the Court considers reported violations of supervised release conditions by Defendant Stacy Stacey. Judge Thapar entered a judgment against Defendant on September 11, 2009, for conspiracy to distribute and possession with intent to distribute hydrocodone, and conspiracy to distribute and possession with intent to distribute alprazolam. ART-D.E. 61.[1] Defendant was sentenced to thirty-three months imprisonment, followed by thirty-six months of supervised release. *Id.* at 2-3. Judge Van Tatenhove then entered a judgment against Defendant on December 9, 2010, for failure to surrender for service of the sentence imposed by Judge Thapar. GFVT-D.E. 26. Defendant was sentenced to twenty-one months imprisonment, to run consecutively to Defendant's underlying federal sentence, followed by thirty-six months of supervised release. *Id*. at 2-3. Defendant began her supervised release term on April 25, 2014.

On October 31, 2014, Judge Thapar and Judge Van Tatenhove approved a Report on Offender Under Supervision outlining Defendant's admitted use of marijuana and requesting no

---

[1] To ease citing to both cases in this matter, the Court refers to 6:08-CR-123-ART-HAI-2 as "ART" and 6:10-CR-03-GFVT-HAI as "GFVT."

action be taken.  ART-D.E. 70; GFVT-D.E. 37.  That report stated that Defendant was approved to relocate to the Southern District of Ohio ("SDOH") on September 12, 2014.  ART-D.E. 70; GFVT-D.E. 37.  On September 25, 2014, Defendant met with a probation officer in SDOH and admitted to using marijuana before leaving the Eastern District of Kentucky.  ART-D.E. 70; GFVT-D.E. 37.  That report further stated that Defendant had since returned to this District.  ART-D.E. 70; GFVT-D.E. 37.  Defendant subsequently submitted two urine samples, both of which yielded negative results for all controlled substances.  ART-D.E. 70; GFVT-D.E. 37.

On June 2, 2015, the Unites States Probation Office submitted another Supervised Release Violation Report (the "Report"), and secured warrants from Judge Van Tatenhove and Magistrate Judge Robert Wier.  First, per the Report, Defendant allegedly violated Standard Condition No. 7 requiring that she "shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician."  Specifically, Defendant submitted an unobserved urine specimen for testing on May 22, 2015, that tested positive for the presence of marijuana via instant testing device.  When questioned, Defendant denied the use of any marijuana since her admission to the probation officer in SDOH.  The urine sample was sent to Alere Toxicology Services, which returned a positive test result for marijuana metabolite on May 25, 2015.  This is a Grade C supervised release violation.  Second, in relation to the use of marijuana, the Report charges Defendant with violating the condition that she refrain from committing another federal, state, or local crime.  Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's prior drug conviction, Violation Two charges Defendant with conduct that would be a federal crime, that is,

2

simple possession of a controlled substance, which would be a Class E felony pursuant to 21 U.S.C. § 844(a). This would be a Grade B supervised release violation.

The Court conducted an initial appearance pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure on June 15, 2015, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. ART-D.E. 76; GFVT-D.E. 43. At the initial appearance, the United States moved for interim detention, and Defendant did not argue for release. ART-D.E. 76; GFVT-D.E. 43. Based on the heavy § 3143(a) defense burden, the Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. ART-D.E. 76; GFVT-D.E. 43.

At the final hearing on June 18, 2015, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. ART-D.E. 78; GFVT-D.E. 46. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the charged violations. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for both violations as described in the Report. ART-D.E. 78; GFVT-D.E. 46. In the supervised release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established Violation Two under the standard of § 3583(e).

The Court has evaluated the entire record, including the most recent Supervised Release Violation Report and accompanying documents, the sentencing materials from the underlying Judgments in this District, and the documentation concerning Defendant's previous violations. Additionally, the Court has considered all of the section 3553 factors imported into the section 3583(e) analysis. Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offenses of conviction.

Defendant's conviction for conspiracy to distribute and possess with intent to distribute hydrocodone is a Class D felony. *See* 21 U.S.C. § 841(b)(1)(D) (2006); 18 U.S.C. § 3559. Defendant's conviction for failure to surrender for service of sentence pursuant to 18 U.S.C. § 3146, as enhanced by 18 U.S.C. § 3147, is a Class C felony. *See* 18 U.S.C. § 3559. For either a Class C or Class D felony, the maximum revocation sentence provided under section 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). Notably, Defendant is subject to up to twenty-four months in *each* case and the terms could be ordered to run consecutively. *See* 18 U.S.C. § 3584.

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade B violation. Given Defendant's criminal history category of II (the category at the time of the drug conviction in this District) and a Grade B violation, *see* U.S. Sentencing Guidelines Manual § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's range in the drug case, under the Revocation Table of Chapter 7, is six to twelve months. Given Defendant's criminal history category of III (the category at the time of the failure to surrender conviction in this District) and a Grade B violation, Defendant's range in

4

the failure to surrender case, under the revocation Table of Chapter 7, is eight to fourteen months.

At the hearing, the parties disputed the appropriate sentence. The government urged the Court to sentence Defendant to a term of imprisonment of twelve months for each underlying conviction, to be served concurrently. The government argued for a term of thirty-six months of supervised release to follow imprisonment on the drug conviction, and a term of twenty-four months to follow imprisonment on the failure to surrender conviction, to be served concurrently as well. The government argued that the nature and circumstances of the drug conviction were particularly troubling as demonstrated by the effects of her distribution, specifically that Defendant distributed to a pregnant woman, the woman birthed a child addicted to painkillers, the child was removed from her custody, she completed rehabilitation, but then Defendant caused her to relapse. In addition to this danger to the public, the government argued that Defendant presents a danger to herself through her continued use of marijuana, which has been known to lead to other drug use. When questioned by the undersigned about how to resolve the tension between Defendant's admission that she used before relocating to SDOH and her denial of marijuana use when confronted with the positive field test on these violations, the government argued that this simply means that Defendant is aware that she is "out of strikes" at this point. The government suggested its recommendation would deter further criminal conduct while also providing assistance to Defendant.

Defense counsel argued that Defendant has already served significant sentences for her prior conduct, that the government's recommended sentence seeks to punish her again for that behavior, disagreed that marijuana is a "gateway drug," and asked for imprisonment for eight months. Defense counsel did not take a position on whether a term of supervised release should

5

be re-imposed, but asked that the Court recommend imprisonment for twelve months and one day if inclined to adopt the government's recommended sentence.

Defendant elected to make a statement to the Court, emphasizing that she has truly tried to better herself. She offered that she completed a 400 hour RDAP class, two 100 hour classes, two 40 hour classes, and classes to try to overcome traumatic events in her past, despite the fact that only one 40 hour class was required. She opined that such assistance and treatment, and attendance at church has provided stability. Defendant claimed that the positive urine test was due to having dropped the collection cup into a broken toilet, which she believes contained someone else's urine that must have contained THC, which then led to the sample feeling not warm enough and questioning by her supervising officer as to whether she had diluted her sample. She asked for increased drug treatment, and expressed that she is determined to stay clean.

Because of this claim concerning the validity of the urine sample, the undersigned called USPO Joey Tyler to the stand. Officer Tyler testified that he began supervising Defendant in April, and stopped in for a home visit with Defendant sometime in May. During that visit, he conducted an unobserved instant drug urinalysis. He noted that the temperature of the sample provided by Defendant was not normal and asked her if it was dipped in the toilet, which she denied. USPO Tyler stated that Defendant did not explain at that time that she unintentionally dropped the receptacle into the toilet and that (contrary to Defendant's testimony) there was no discussion about her offering to take another test, though he could not recall whether he offered to conduct one.

When questioned by the government, USPO Tyler stated that Defendant had his telephone number, but did not follow up and ask for new testing. Upon questioning by defense

counsel, USPO Tyler stated that Defendant has not tested positive for controlled substances at any other time during his supervision of her, and that the visit was random. He stated that he did not believe she was under the influence of a controlled substance on the day of the visit.

Notably, Defendant chose not to testify. Despite having admitted under oath to marijuana use, the undersigned determined that Defendant's stipulation is more appropriately characterized as a stipulation of an inability to contest the government's case under the applicable preponderance of the evidence standard.

At the outset, the Court notes that Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant because she possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of § 3583(g)(1). *See United States v. Metcalf*, 292 F. App'x 447, 450 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Because Defendant has already received the best treatment that can be provided through these proceedings (the RDAP program), the record does not support application of this exception.

The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The undersigned confronts a tension in this regard because Defendant freely admitted to her use of marijuana before moving to SDOH, but now her testimony and that of USPO Tyler conflict. The Court rejects Defendant's implausible and unsworn explanation.

The Court has carefully weighed the nature and circumstances of the offense, the need for education, training, and treatment, the need to deter criminal conduct, and the need to protect the public. Defendant has a troubling history of abusing and selling drugs. As the government has argued, the nature and circumstances of the underlying drug offense are egregious. However, Defendant has suffered tragic abuse, which is certainly mitigating. Further, Defendant's personal situation is different now than it was at the time of her original conviction, reducing the risk of committing similar crimes. The Court finds that a term of ten months of imprisonment in each case, to be served concurrently, is sufficient, but not greater than necessary, to meet the statutory goals of sentencing at this stage. Notably, ten months is the middle of the combination of the two Guidelines Ranges in this case (6-12 and 8-14).

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's drug conviction, pursuant to 21 U.S.C.

§ 841(b)(1)(D) (2006) and 3583(h), there is no maximum period of supervised release that can be re-imposed. The court recommends thirty-six months of supervised release to follow Defendant's term of imprisonment on the drug conviction. Given the nature of Defendant's failure to surrender conviction, pursuant to 21 U.S.C. §§ 3146 and 3147 (2006) and 3583(b) and (h), a maximum period of three years of supervised of supervised release, less any term of imprisonment, could be imposed. Here, that equates to a maximum of twenty-six months. The Court recommends twenty-six months of supervised release to follow Defendant's term of imprisonment on the failure to surrender conviction. The terms of supervised release in both cases are to be served concurrently pursuant to 18 U.S.C. § 3624(e).

Based on the foregoing, the Court **HEREBY RECOMMENDS**:

1. Revocation and incarceration in each case for a term of ten months, to be served concurrently; and

2. Thirty-six months of supervised release to follow imprisonment in the drug case, and twenty-six months supervised release to follow imprisonment in the failure to surrender case, to be served concurrently, under the conditions previously imposed.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be submitted for decision by Judges Thapar and Van Tatenhove.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and

rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

    This the 7th day of July, 2015.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge